FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA    2006 JUL 24  PM 2: 39

AUGUSTA DIVISION

CLERK _____
SO. DIST. OF GA.

LARRY JOHN STEPHENS,          )
                              )
        Plaintiff,            )
                              )
    v.                        )        CV 105-171
                              )
TONY HOWERTON, Warden; et al.,)
                              )
        Defendants.           )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

The captioned matter is before the Court on Defendants' motion to dismiss Plaintiff's

complaint for failure to exhaust administrative remedies as required by the Prison Litigation

Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. no. 2.) Pursuant to Fed. R. Civ. P. 12(c),

the Court has converted the motion into a motion for summary judgment. (See doc. no. 18.)

Plaintiff has filed a response. (Doc. no. 14.)[1]  Also pending is Defendants' motion to dismiss

Defendants Officer King ("King") and Officer A.D.W. Whitaker ("Whitaker") for failure to

effect service of process upon them. (Doc. no. 21.) Plaintiff opposes this motion. (Doc. no.

25.) Finally, Defendants have also filed a "supplemental" motion for summary judgment on

the merits. (Doc. no. 27.) Plaintiff opposes this motion as well. (Doc. nos. 31-32.)

For the reasons explained herein, the Court **REPORTS** and **RECOMMENDS** that

Defendants' motion for summary judgment pursuant to § 1997e(a) (doc. no. 2) be

---

[1]Under Loc. R. 7.5, Plaintiff's response was untimely; accordingly, Plaintiff requested leave to file his
response out-of-time. (Doc. no. 13.) However, when the Court converted Defendants' motion to dismiss into
a motion for summary judgment, it afforded Plaintiff additional time to respond. (See doc. no. 18, p. 4.)
Accordingly, the motion for leave to file a response out-of-time (doc. no. 13) is **MOOT**, and the Clerk is
**DIRECTED** to **TERMINATE** it from the motions report.

**GRANTED**, that the motion to dismiss King and Whitaker (doc. no. 21) be **DENIED** as **MOOT**, that Defendants' motion for summary judgment on the merits (doc. no. 27) be **DENIED** as **MOOT**, that Plaintiff's complaint be **DISMISSED** without prejudice, and that an appropriate final judgment be **ENTERED** in favor of Defendants.

## I. BACKGROUND

### A.    Plaintiff's Complaint

In his complaint, filed October 5, 2005, Plaintiff, an inmate at Augusta State Medical Prison ("ASMP"), avers that Defendants Officer Bryant ("Bryant") and Officer Kendalt ("Kendalt") brutally beat him on May 6, 2005. (Doc. no. 1, p. 4.) During the beating, Plaintiff allegedly sustained a broken right arm. (Id.)  Defendant Sergeant Dermantez ("Dermantez") purportedly observed the beating and failed to intervene.  (Id.)  Defendant Officer Coles ("Coles") arrived on the scene to help carry Plaintiff to a "lock down" cell where he was kept "handcuffed without food, medication,[2] and medical attention." (Id. at 5.)  Defendant King also allegedly participated in denying Plaintiff medical attention. (Id. at 6.)  Next, although Plaintiff offers no specifics, he claims that Defendant Officer Jones ("Jones") has "harassed" him. (Id. at 6.)  Finally, Plaintiff avers that Defendants Warden Tony Howerton ("Howerton") and Deputy Warden Dennis Brown ("Brown") knew about and condoned a pattern of excessive force at ASMP. (Id.)

Strangely, although he lists Defendant Whitaker in the caption of his complaint, Plaintiff's complaint provides no averments regarding Whitaker's involvement in his case. (Id. at 1.)  Also of import, Plaintiff maintains, if only in conclusory fashion, that he exhausted all available administrative remedies prior to filing suit as required by the PLRA. (Id. at 3.)

---

[2]Plaintiff avers that he is diabetic. (Id. at 5.)

**B.   Defendants' Arguments**

On the other hand, Defendants argue (among other things) that because Plaintiff failed to file a grievance regarding the events alleged in the complaint, Plaintiff did not exhaust available administrative remedies prior to filing suit as required by the PLRA. Accordingly, Defendants argue that the instant suit should be dismissed. In support of this argument, Defendants offer the affidavit of Ms. Sarah Draper, Manager of the Office of Investigations and Compliance for the Georgia Department of Corrections ("DOC"), and a copy of the DOC Standard Operating Procedure ("SOP") IIB05-0001 § VI, which governs administrative grievance procedures at Georgia state prisons. See Defs.' Exs. A & B (attached to doc. no. 3). Defendants also offer the affidavit of Ms. Jackie Morgan, the Grievance Coordinator at ASMP. See Defs.' Ex. C (attached to doc. no. 17).

Ms. Draper provides that, pursuant to SOP IIB05-0001 § VI, ASMP has maintained an administrative grievance process that is available to all inmates. See Draper Aff., ¶¶ 6-10. Nevertheless, according to Ms. Draper, DOC records indicate that Plaintiff did not file a grievance regarding the beating alleged in the complaint. Id., ¶ 12. Of note, Ms. Morgan provides that Plaintiff did file grievances regarding unrelated matters on March 23, 2005, April 13, 2005, June 23, 2005, July 21, 2005, and August 15, 2005. Morgan Aff., ¶ 13. Additionally, Ms. Morgan states that from May 9, 2005 until June 1, 2005, Plaintiff was housed in "lockdown," and that during this time she was the counselor for inmates in lockdown. Id., ¶ 9. According to Ms. Morgan, during this time Plaintiff never requested an informal grievance form, asked for help in completing an informal grievance form, or made any attempt to file an out-of-time grievance. Id., ¶¶ 10-12. Finally, Ms. Morgan also avers that, had Plaintiff requested an informal grievance form or asked for help in completing the

form, she would have responded appropriately under SOP IIB05-0001 § VI(A)(3), which requires institutional staff to provide any needed assistance to inmates "upon request." Id., ¶ 10.

## C.     Plaintiff's Response

In response, Plaintiff avers that he was affirmatively denied the opportunity to pursue administrative remedies, rendering them "unavailable." (See doc. nos. 14, 23, 24.) In support of this argument, he offers two affidavits. Pl.'s Exs. A & B (attached to doc. no. 14). In the first affidavit, Plaintiff describes his alleged maltreatment at the hands of Defendants. See Pl.'s Ex. A, pp. 1-9. Plaintiff also offers that he could not write a "statement" because his right arm was broken. Id. at 9. Next, Plaintiff states that prison staff refused to let another inmate write a "statement" for him. Id.

In the second affidavit, Plaintiff reasserts that he could not write a "statement" because of his broken arm. Pl.'s Ex. B, p. 1. Plaintiff also repeats his allegation that prison staff refused to help him write a "statement." Id. at 1-3. According to Plaintiff, prison officials, including Ms. Morgan, also refused to allow Plaintiff to receive help from another inmate in filling out a grievance form. Id. at 2. Plaintiff also maintains that Whitaker and Ms. Morgan refused to allow him to file an out-of-time informal grievance. Id. at 2, 7. Plaintiff also complains that he could not file an informal grievance while in "isolation." Id. at 3.

Interestingly, Plaintiff also provides that on June 4, 2005, he was allowed to have a friend write various documents relating to cases Plaintiff had filed in "the courts." Id. at 4. Plaintiff also offers the conclusory allegation that there is a "conspiracy" to cover up the excessive force incident alleged in his complaint. Id. Also of note, Plaintiff admits that he has filed grievances regarding other matters, see id. at 5, and that he was "not afraid to write a

4

grievance[;] [his] grievance record is proof." Id. at 6.  Finally, Plaintiff reiterates that he did

not exhaust administrative remedies because he was "not allowed" to do so.  Id.

**D.     The Administrative Grievance Process**

Therefore, the key issue in this case is whether Plaintiff has complied with § 1997e(a).

Before assessing this question, it will be helpful to explain the grievance procedure used in the

Georgia state prison system.   Under SOP IIB05-0001 § VI(B), once an inmate has

unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the

administrative remedies procedure commences with the filing of an informal grievance.  The

inmate has ten (10) calendar days from "the date the offender knew, or should have known,

of the facts giving rise to the grievance" to file the informal grievance.  SOP IIB05-0001 §

VI(B)(5).

As noted *supra*, SOP IIB05-0001 § VI(A)(3) requires institutional staff to give inmates

any assistance in completing grievance forms needed due to any physical or mental handicap.

Also, the timeliness requirements of the administrative process may be waived upon a showing

of good cause.  See id § VI(C)(2) & (D).  Also of note, the SOP strictly forbids staff from

denying any inmate access to the grievance process, and requires prison counselors to accept

out-of-time grievances.  See id. § VI(B)(4) & (6); see also Morgan Aff., ¶¶ 10-12.

The SOP requires that an inmate be given a response to his informal grievance within

ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance

procedure must be completed before the inmate will be issued a formal grievance.  Id §

VI(B)(12)-(13).  If unsatisfied with the resolution of his informal grievance, an inmate must

complete a formal grievance form and return it to his counselor within five (5) business days

of his receipt of the written resolution of his informal grievance.  Id. § VI(C)(2).  Once the

5

formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

Having clarified the factual background of the case, the Court turns to the merits of the motions for summary judgment.

## II. DISCUSSION

### A.    Generally Applicable Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the *movant*, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).

---

[3] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

On the other hand, if the *non-moving* party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.    Unique Difficulties Posed by the Instant Case**

Before assessing the merits, the Court should also note that factual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts. In the instant case, the Court is faced with a "swearing match" between prison officials and an inmate regarding whether the actions of prison staff rendered administrative remedies

7

"unavailable." As a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick, 333 F.3d at 1240 n.7.

Nevertheless,

> in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," Anderson, 477 U.S. at 252, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

Furthermore, as the Honorable B. Avant Edenfield, United States District Judge, has explained in an analogous case:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals*--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?
> . . . . [T]he Court concludes that . . . . exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

Stanley v. Rich, CV 605-075, 2006 WL 1549114, at *2-3 (S.D. Ga. June 1, 2006), *appeal*

*docketed*, No. 06-13502 (11th Cir. June 22, 2006) (quoting Priester v. Rich, CV 605-071, doc.

no. 41, pp. 6-7 (S.D. Ga. Apr. 4, 2006), *appeal docketed*, No. 06-12290 (11th Cir. Apr. 21,

2006)).

 Thus, the Court will resolve the exhaustion issue and will not punt the matter to a jury,

notwithstanding any ambiguities or uncertainties in the evidence.  Of course, the Court is

empowered to conduct an evidentiary hearing if necessary to resolve the exhaustion issue.  See,

e.g., Johnson v. Garraghty, 57 F. Supp.2d 321, 329 (E.D. Va. 1999).  Nevertheless, the need

for such a hearing would be rare.[4]  See, e.g., Knuckles El v. Toombs, 215 F.3d 640, 642 (6th

Cir. 2000) ("[C]ourts should not have to hold time-consuming evidentiary hearings in order

simply to determine whether it should reach the merits or decline under [§ 1997e(a)].").  Here,

Plaintiff has not requested a hearing nor offered any reason to suppose that he has any

additional evidence bearing on the exhaustion issue.  Accordingly, the Court resolves the

matter of exhaustion, including any credibility issues, on the basis of the record now before the

Court.

**C.** **Plaintiff's Failure to Exhaust Available Administrative Remedies**

 **1.** **The Sole Issue is Whether Administrative Remedies Are Available.**

 Notwithstanding Plaintiff's lengthy affidavit describing his alleged mistreatment at the

hands of Defendants or Defendants' pending "supplemental" motion for summary judgment--

which addresses the underlying merits of Plaintiff's complaint--the Court will not conflate

consideration of the exhaustion issue with an evaluation of the merits of Plaintiff's case.  Nor

will the Court address any defenses related to service of process until the exhaustion question

has been resolved.  If Plaintiff has failed to exhaust administrative remedies as required by the

---

[4]Indeed, it is at least arguable that affording prisoners evidentiary hearings on exhaustion-related issues would frustrate the PLRA's purpose of curtailing inmate litigation.

PLRA, his complaint must be dismissed, irrespective of the underlying merits of his claims or the existence of any defense.[5]  Simply put, as exhaustion of administrative remedies is a "precondition" to filing suit, exhaustion under § 1997e(a) is a threshold inquiry. <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000)(<i>per curiam</i>); <u>see also</u> <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir. 1999).

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998).  Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); <u>see also</u> <u>Alexander</u>, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. __, 2006 WL 1698937, at *7 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. <u>Id.</u> at *5 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance

---

[5] <u>See, e.g.</u>, <u>Kozuh v. Nichols</u>, No. 05-15207, 2006 WL 1716049, at *1 n.2, *3 (11th Cir. June 22, 2006) (district court may dismiss suit as to both unserved and served defendants for failure to exhaust administrative remedies).

with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. __, 2006 WL 1788335 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'"[6] Salas v. Tillman, No. 05-10399, 162 Fed. Appx. 918, 920, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Here, Plaintiff argues that administrative remedies were not available to him because prison staff, including Whitaker and Ms. Morgan: 1) refused to afford Plaintiff access to grievance forms while he was in isolation, 2) refused to allow Plaintiff to receive any help in completing grievance forms while he was unable to write due to an injury, and 3) refused to accept an out-of-time informal grievance from Plaintiff. Thus, Plaintiff contends that prison staff at ASMP blatantly disregarded their duties under SOP IIB05-0001 § VI. Relying on the sworn affidavits of Ms. Draper and Ms. Morgan, Defendants flatly contradict these claims and maintain that nothing prevented Plaintiff from utilizing the grievance process.

The Court recognizes that several courts of appeal have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a).[7,8]

---

[6]Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998).

[7] See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004)(*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[8]To the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a) because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

11

Of particular note, in <u>Miller</u>, 196 F.3d at 1194, the Eleventh Circuit explained that prison officials cannot "unequivocally" tell an inmate that resort to administrative remedies is "precluded" or "even prohibited" and then rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative remedies. Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies. That principle of law does not alter the key inquiry--whether administrative remedies were actually "available" to Plaintiff prior to the filing of the instant suit.

### 2.    Plaintiff's Interference Argument Fails.

In this instance, the Court concludes that Plaintiff has not shown that Defendants prevented or inhibited him from exhausting administrative remedies prior to filing suit. Plaintiff relies entirely upon his own self-serving accusations. Admittedly, the Eleventh Circuit has expressed concern when prison officials tell a prisoner "unequivocally" that further resort to the administrative process is "futile, even prohibited." <u>Miller</u>, 196 F.3d at 1194. However, the instant case is far removed from the Eleventh Circuit's concerns in <u>Miller</u>. First, in <u>Miller</u> the plaintiff relied upon actual documentary evidence proving that he had been instructed by prison officials that an administrative appeal was prohibited. <u>Id.</u> In contrast, Plaintiff has presented no evidence save his own self-serving affidavits, which are squarely contradicted by the sworn affidavits of Ms. Draper and Ms. Morgan.

More importantly, Plaintiff's credibility is harmed by the evidence, which shows that Plaintiff repeatedly availed himself of the grievance process both before and after the beating alleged in the complaint. Of particular note, Plaintiff admits that he filed a grievance on June 23, 2005. Plaintiff also admits that ASMP staff began allowing him to use another inmate as

12

an amanuensis as early as June 4, 2005. Thus, even if one assumes (which the Court does not) that Plaintiff was temporarily denied access to the administrative process, there is little reason to credit Plaintiff's contention that he was prevented from pursuing an out-of-time grievance until the time he filed the instant complaint in October 2005.[9]

Simply put, even assuming *arguendo* that Plaintiff was unable to timely pursue administrative remedies, because Plaintiff did not seek to file an out-of-time grievance, he did not exhaust administrative remedies. See Johnson, 418 F.3d at 1155; Harper, 179 F.3d at 1312. Once administrative remedies became available, Plaintiff was obliged to exhaust them before filing suit. See Hilton v. Secretary for Dep't of Corr., No. 03-13492, 170 Fed. Appx. 600, 605, 2005 WL 3802979, at *5 (11th Cir. Nov. 1, 2005). In Hilton, a state prisoner alleged that he could not exhaust administrative remedies because he was denied grievance forms while in "administrative confinement." Id. The Eleventh Circuit explained that "Hilton's contention . . . [did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement." Id. Thus, albeit in an unpublished opinion, the Eleventh Circuit has endorsed this Court's view that once the impediment to exhaustion is removed, an inmate's failure to utilize administrative remedies

---

[9]The Court will briefly note Defendants' secondary argument that, because Plaintiff was transferred from ASMP to Macon State Prison in February 2006, his assertions regarding the unavailability of administrative remedies at ASMP are a *non sequitur*. (See doc. no. 26.) This argument is specious. It is true that this Court has explained that if a change in an inmate's conditions of confinement--e.g., transfer to another prison--removes the complained-of impediment to exhaustion and renders administrative remedies "available," the inmate's failure to exhaust can no longer be justified. See, e.g., Priester, CV 605-071, doc. no. 35, *adopted by* doc. no. 41.

However, § 1997e(a)'s exhaustion requirement is a *prerequisite* to filing suit. If administrative remedies are not available *at the time the suit is filed*, § 1997e(a)'s exhaustion requirement has no application. To illustrate, every court to consider the issue has held "that the current version of § 1997e(a), as amended by the PLRA, may not be retroactively applied to cases already pending at the time of the PLRA's enactment." Foulk v. Charrier, 262 F.3d 687, 696 (8th Cir. 2001); see also Ghana v. Holland, 226 F.3d 175, 182 (3d Cir. 2000). This makes perfect sense. A prisoner cannot be faulted for failing to comply with a requirement that did not exist at the time he filed his complaint. Put plainly, it makes no sense to argue that Plaintiff's suit should be dismissed for failing to exhaust remedies which did not become available until after his complaint was filed.

13

can no longer be justified.

In this regard, it is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available. In <u>Kozuh v. Nichols</u>, No. 05-15207, 2006 WL 1716049, at *2 (11th Cir. June 22, 2006), the Eleventh Circuit rejected a prisoner's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable." In rejecting Kozuh's argument for lack of evidence, the Eleventh Circuit noted the existence of contrary evidence that "Kozuh was able to file numerous informal complaints." <u>Id.</u> at *3. The instant case is similar. Although Plaintiff maintains otherwise, there is ample evidence in the record from which to conclude that the grievance process was available to Plaintiff. In sum, the Court concludes that Plaintiff failed to comply with § 1997e(a).

**D.    Dismissal Should Be Without Prejudice.**

As Plaintiff has failed to marshal sufficient evidence to support his assertion that administrative remedies were unavailable, Defendants are entitled to summary judgment.[10] Nevertheless, the Court declines to recommend that the instant case be dismissed with prejudice. Cf. <u>Johnson</u>, 418 F.3d at 1157 (quoting <u>Marsh v. Jones</u>, 53 F.3d 707, 710 (5th Cir. 1995)) ("[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one"). It is the longstanding practice of the presiding District Judge to dismiss cases such as this one without prejudice, in order that the prisoner-plaintiff may attempt to properly exhaust administrative remedies. Also of note, Defendants have not requested that Plaintiff's case be dismissed with prejudice. Thus, although it is at least arguable that a district court has

---

[10] The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

14

authority to dismiss a prisoner's claims with prejudice for failure to exhaust administrative remedies, the Court determines that it would not be appropriate to do so at this time.

## III.  CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment pursuant to § 1997e(a) (doc. no. 2) be **GRANTED**, that the motion to dismiss King and Whitaker (doc. no. 21) be **DENIED** as **MOOT**, that Defendants' motion for summary judgment on the merits (doc. no. 27) be **DENIED** as **MOOT**, that Plaintiff's complaint be **DISMISSED** without prejudice, and that an appropriate final judgment be **ENTERED** in favor of Defendants.

SO REPORTED and RECOMMENDED this 24th day of July, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE